927 A.2d 183

**Jean SCHMEHL and David Schmehl, Appellants,**

**v.**

**Ann WEGELIN and Perry Schmehl, Appellees.**

Supreme Court of Pennsylvania.

Submitted Nov. 29, 2005.

Decided June 12, 2007.

Sharon Leigh Gray, Esq., for Jean and David Schmehl.

Gregory David Henry, Esq., Tract, Kauffman and Henry, Reading, for Ann Wegelin.

Perry Schmehl, for Perry Schmehl.

Gerald J. Pappert, Esq., Office of Attorney General, for Commonwealth of Pennsylvania, Attorney General.

BEFORE: CAPPY, C.J., and CASTILLE, SAYLOR, EAKIN, BAER, BALDWIN AND FITZGERALD, JJ.

### OPINION

Justice SAYLOR.

The question presented is whether Section 5312 of the Domestic Relations Code violates the Equal Protection Clause of the United States Constitution in providing for grandparent visitation of a child when the child's parents are divorced,

engaged in divorce proceedings, or separated for six months or more.

On November 12, 2002, during Mother and Father's separation, a custody order was entered between them regarding their two children. Five months later they were divorced. On April 29, 2005, after Mother refused to permit the children's paternal grandparents ("Grandparents") to pick up the children from school during her period of custody, Grandparents filed an action in the Court of Common Pleas of Berks County under Section 5312 seeking partial custody.[1] Although Father supports his parents' claim, Grandparents joined him as a defendant as a necessary party. *See* Pa. R.C.P. No.1915.6. Mother moved to dismiss the action, asserting that Section 5312 violated her Due Process and Equal Protection rights under the Fourteenth Amendment of the United States Constitution.[2]

The challenged statute enables grandparents to seek partial custody or visitation of their grandchild when the child's parents are divorced, engaged in divorce proceedings, or have been separated for six months or more. *See* 23 Pa.C.S. § 5312. In particular, the statute provides:

In all proceedings for dissolution, subsequent to the commencement of the proceeding and continuing thereafter or when parents have been separated for six months or more, the court may, upon application of the parent or grandparent of a party, grant reasonable partial custody or visitation rights, or both, to the unmarried child if it finds that visitation rights or partial custody, or both, would be in the best interest of the child and would not interfere with the parent-child relationship. The court shall consider the amount of personal contact between the parents or grandparents of the party and the child prior to the application.

1. Grandparents are divorced, but have cooperated to seek partial custody.

2. The Equal Protection Clause, in pertinent part provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. The Due Process Clause provides that no State shall "deprive any person of life, liberty, or property, without due process of law; ..." *Id.*

*Id.* In contrast, standing to obtain partial custody or visitation is not afforded to grandparents of children whose parents are married and living together.[3] This disparate treatment between intact families—married parents living together—and divorced or separated parents, Mother argued, violates equal protection principles.

The trial court agreed, finding that Section 5312 violates the Equal Protection Clause because it impermissibly treats intact families differently from parents who are divorced or separated, and dismissed Grandparent's complaint without addressing the merits of their claim. The trial court noted that the "prohibition against treating people differently under the law does not preclude the Commonwealth from resorting to legislative classifications...." *Schmehl v. Wegelin,* No. 05–5526, *slip op.* at 3 (C.P. Berks July 29, 2005) (quoting *Curtis v. Kline,* 542 Pa. 249, 256, 666 A.2d 265, 268 (1995)). But when that classification burdens a fundamental right, the court explained, strict scrutiny is applied, which requires the classification to be necessary for a compelling government interest. *See id.* Because the classification under Section 5312 burdened a parent's fundamental right to make decisions regarding the upbringing of his or her children, the trial court held that, to uphold the legislative classification created by the statute between parents who are married and living together versus those who are divorced or separated, such classification must be necessary to vindicate a compelling government interest. *See id.* at 6.

The trial court found that no compelling government interest existed for the classification, noting that, although the parents are no longer together, it does not logically follow that state intervention is necessary. In particular, the court observed:

> Both parents remain and, during periods of their partial custody with the children, either parent can provide access to their parents. There is no compelling reason that this

**3.** Under Section 5311, when a child's parents are deceased, the parent of the deceased parent may seek partial custody or visitation. *See* 23 Pa.C.S. § 5311.

> Court can see for the state to require that Mother give up more of her time with the children, so that Father's parents can have their own periods of visitation separate from visitations while Father has custody.... There is no compelling reason, in fact it would create the potential for greater harm, if a child of separated/divorced parents would be subject to, in this case, [two] more potential periods of Court ordered partial custody/visitation. A child of an intact family has freedom to live their life as a child, absent court ordered scheduling of their time. There is no reason to burden a child of separated/divorced parents with more court ordered interference in their already restricted childhood. Their parents can make sure there is contact with the grandparents.

*Schmehl*, No. 05–5526, *slip op.* at 8.

In its subsequent opinion under Rule of Appellate Procedure 1925(a), the trial court reiterated its earlier ruling, explaining:

> Although the parents no longer live together, each must continue to enjoy the fundamental right, free from court interference, to make decisions about the upbringing of their children, including the decision about with whom the children associate. It is important to note that this court's decision does not preclude [Grandparents] from ever seeing the children, which they may do during periods of the father's partial custody. It merely asserts that there is no compelling reason to justify subjecting the children of divorced or separated parents to additional periods of Court ordered ... custody and visitation, nor requiring Mother to relinquish periods of her custody so that Father's parents may have their own periods, when such court intervention would not be permissible if the parents were married or living together.

*Schmehl v. Wegelin*, No. 05–5526, *slip op.* at 3 (C.P. Berks September 19, 2005). Grandparents appealed to this Court, which has exclusive appellate jurisdiction of decisions of a court of common pleas that determine a statute to be unconstitutional. *See* 42 Pa.C.S. § 722(7).

As the constitutionality of statute presents a question of law, our review is plenary. *See Theodore v. Delaware Valley School Dist.*, 575 Pa. 321, 333–334, 836 A.2d 76, 83 (2003) (citing *Purple Orchid v. Pennsylvania State Police*, 572 Pa. 171, 813 A.2d 801 (2002)). A statute duly enacted by the General Assembly is presumed valid and will not be declared unconstitutional unless it "clearly, palpably and plainly violates the Constitution." *Purple Orchid*, 572 Pa. at 171, 178, 813 A.2d at 805. The party seeking to overcome the presumption of validity bears a heavy burden of persuasion. *See Commonwealth, Dep't of Transp. v. McCafferty*, 563 Pa. 146, 155, 758 A.2d 1155, 1160 (2000).

Grandparents challenge the trial court's determination that Section 5312 violates non-intact families' equal protection rights. Although Grandparents concede that Mother's interest in the care, direction, and control of her children is a fundamental right, Grandparents assert that the need to protect children of non-intact families is a compelling government interest, and the standards set forth in the statute are narrowly tailored to such interest. In particular, Grandparents note that, under the statute, the grant of partial custody or visitation is not automatic; rather, it depends on several factors that they must establish.

In contrast, Mother argues that a state should not interject its own beliefs regarding parenting decisions or thwart a parent's ability to raise her children as she sees fit. She maintains that no compelling interest exists to treat married parents differently from separated parents who are still alive and still fit to make decisions regarding their children. Although she and Father are divorced, Mother contends, it does not logically follow that state intervention is necessary.

In *Hiller v. Fausey*, 588 Pa. 342, 904 A.2d 875 (2006), *cert. denied*, —— U.S. ——, 127 S.Ct. 1876, 167 L.Ed.2d 363 (U.S.Pa.2007), this Court recently considered the constitutionality under the Due Process Clause of another grandparent visitation statute, Section 5311 of the Domestic Relations Code, which delimits the circumstances in which a grandparent may seek partial custody or visitation of his or her

grandchild when a parent has died.[4] Observing that the right to make decisions concerning the care, custody, and control of one's own children "is one of the oldest fundamental rights protected by the Due Process Clause [of the Fourteenth Amendment]," *id.* at 358, 904 A.2d at 885 (citing *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000)), this Court determined that any infringement of such right requires strict scrutiny review to determine whether the infringement is supported by a compelling state interest and if the infringement is narrowly tailored to effectuate that interest. *See Hiller*, 588 Pa. at 359, 904 A.2d at 885–86. In applying strict scrutiny to Section 5311 and finding it constitutional, the Court identified the compelling state interest for grandparent partial custody or visitation under Section 5311 as the state's "longstanding interest in protecting the health and emotional welfare of children," under the state's *parens patriae* interest. *See id.* at 359, 904 A.2d at 886. Section 5311 was narrowly tailored to serve that interest, the Court held, because it extends standing to seek partial custody or visitation "not merely to grandparents, but to grandparents whose child has died." *Id.* Additionally, the Court noted that:

> This limitation ... furthers our General Assembly's express public policy to assure the "continuing contact of the child or children with grandparents when the parent is deceased, divorced or separated." 23 Pa.C.S. § 5301. Moreover, the rational behind the stated policy is clear: in the recent past, grandparents have assumed increased roles in their grandchildren's lives and our cumulative experience demonstrates the many potential benefits of strong inter-generational ties.

4. Section 5311 provides:
   > If a parent of an unmarried child is deceased, the parents or grandparents of the deceased parent may be granted reasonable partial custody or visitation rights, or both, to the unmarried child by the court upon a finding that partial custody or visitation rights, or both, would be in the best interest of the child and would not interfere with the parent-child relationship. The court shall consider the amount of personal contact between the parents or grandparents of the deceased parent and the child prior to the application.
   > 23 Pa.C.S. § 5311.

*Id.* at 360, 904 A.2d at 886 (citing *Troxel,* 530 U.S. at 64, 120 S.Ct. at 2059). In view of such interest, the Court found the statute to be narrowly tailored in that it required the court to ensure that the partial custody and visitation granted would not interfere with the parent-child relationship, consider the pre-petition relationship and prior willingness of the parent to provide access to the child without a court order, and determine that such grant would serve the best interests of the child. *See id.* at 361, 904 A.2d at 887. Additionally, under relevant case law, the courts must afford a presumption in favor of the parent's determination of custody that meaningfully tips the balance in her favor. *See id.* at 362–63, 904 A.2d at 887–88.

The present case was addressed in the trial court on equal protection grounds as opposed to substantive due process principles and involved Section 5312 of the Domestic Relations Code, as opposed to Section 5311, which was the subject of *Hiller.* In this context, however, the substantive due process and equal protection inquiries are essentially identical. In this regard, both inquiries employ a threshold assessment concerning the weight to be ascribed to the parental interest to determine the appropriate level of scrutiny, and both employ a balancing formulation in the application of such scrutiny in which the government's interest is tested, on the one hand, to determine whether it represents an acceptable infringement on the parental interest (for purposes of substantive due process), and on the other hand, whether it is sufficient to support a particular classification (for equal protection purposes). Additionally, Sections 5311 and 5312, addressing grandparent visitation and partial custody in circumstances involving the death of a parent and divorce, respectively, are both concerned with protecting the health and emotional welfare of children under the state's *parens patriae* interest in circumstances where the child's family continuity is disrupted. Finally, in *Hiller,* Section 5311 was able to withstand the due process challenge only because the statute employs a classification scheme restricting its reach to a limited class of grandparents (those whose children have died)—in other words, the

classification was at the heart of the determination that the statute was narrowly tailored to serve the compelling state interest in protecting the health and emotional welfare of children. *See Hiller,* 588 Pa. at 359–60, 904 A.2d at 886. Thus, we find the *Hiller* decision to be highly relevant in the present context.[5]

Here, Mother challenges as a violation of her equal protection rights the classification between intact and non-intact families under Section 5312. Given the role allocated to such classification in authorizing an infringement on a parent's fundamental right to make child-rearing decisions, for the reasons elaborated more fully in *Hiller,* it is clear that the trial court correctly applied strict scrutiny. *See generally Smith v. Coyne,* 555 Pa. 21, 29, 722 A.2d 1022, 1025 (1999) ("Strict scrutiny is applied to classifications affecting a suspect class or fundamental right."); *see also Clark v. Jeter,* 486 U.S. 456, 461, 108 S.Ct. 1910, 1914, 100 L.Ed.2d 465 (1988). Thus, initially the court appropriately centered the focus upon whether the classification is necessary to serve the Commonwealth's *parens patriae* interest and whether the means used are narrowly tailored to effectuate the state purpose. *Khan v. State Bd. of Auctioneer Examiners,* 577 Pa. 166, 184, 842 A.2d

**5.** In response to Mr. Chief Justice Cappy's assertion that we have improperly intermixed equal protection and due process principles, we are not alone in recognizing the substantial overlap in the application of these respective constitutional precepts relative to statutes that rely upon classifications, such as Sections 5311 and 5312 of the Domestic Relations Code. *See, e.g., Bearden v. Georgia,* 461 U.S. 660, 666–67, 103 S.Ct. 2064, 2069, 76 L.Ed.2d 221 (1983) (highlighting the substantial similarity between determining whether a particular classification may be used in taking governmental action consistent with equal protection and assessing whether it is fundamentally unfair to take such action under substantive due process, as arising in the context of parole revocation decisions based upon the failure to pay fines by indigents). *See generally Goulart v. Meadows,* 220 F.Supp.2d 494, 500 (D.Md.2002) ("Modern substantive due process analysis is generally understood to overlap considerably with equal protection analysis." (citing JOHN E. NOWAK AND RONALD D. ROTUNDA, CONSTITUTIONAL LAW § 11.4 (5th ed.1995))); *Lofty v. Richardson,* 440 F.2d 1144, 1147 (6th Cir.1971) ("As to an assertion of an arbitrary classification argument, there is a wide area of overlap between the effect of the Fifth Amendment's due process clause and the Fourteenth Amendment's equal protection clause.")(citing *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954)).

936, 947 (2004).[6]  Consistent with *Hiller*, however, we believe that in applying this test the trial court ascribed insufficient weight to the government's interest in the children's well-being, in the context of this narrowly-tailored statute addressing grandparent involvement in non-intact families.

In this regard, the classification under Section 5312 is not based on antagonism against non-intact families, but, like Section 5311, reflects circumstances where the child's family environment has been disturbed.  *Accord Seagrave v. Price*, 349 Ark. 433, 79 S.W.3d 339, 344 (2002) ("Because the differences in the circumstances between married and divorced parents established the necessity to discriminate between the classes, the [grandparent visitation] statute at issue would not be found unconstitutional.");[7]  *Blixt v. Blixt*, 437 Mass. 649,

6.  In both the equal protection and substantive due process settings, strict scrutiny has been framed by the courts in various ways, but its most common formulation centers squarely on the main conception of "narrowly tailored measures that further compelling government interests." *Johnson v. California*, 543 U.S. 499, 505, 125 S.Ct. 1141, 1146, 160 L.Ed.2d 949 (2005).  The Chief Justice effectively appears to elevate the phrase "necessary to a compelling state interest" that has sometimes been used in describing strict scrutiny into an "only means" test for equal protection that differs from the application of strict scrutiny in due process analysis.  *See* Dissenting Opinion, *Op.* at 597–98, 927 A.2d at 192 (Cappy, C.J.).  Such an asserted distinction is faulty, however, in the first instance, because the courts have employed the same phraseology in both the equal protection and substantive due process contexts.  *Compare Khan*, 577 Pa. at 184, 842 A.2d at 947 (describing the test for strict scrutiny for purposes of substantive due process as whether legislation "is *necessary to* promote a compelling state interest and is narrowly tailored to effectuate that state purpose." (emphasis added)), *with Commonwealth v. Bell*, 512 Pa. 334, 344, 516 A.2d 1172, 1178 (1986) (explaining, in the equal protection setting, that strict scrutiny entails consideration of whether a classification is "*necessary to* the achievement of a compelling state interest" (emphasis added)).  Moreover, in neither context do we believe that the essential inquiry amounts to an only means test.

7.  In *Seagrave*, on consideration of a grandparent visitation statute analogous to Section 5312, the Supreme Court of Arkansas found that the classification between a married parent and unmarried parent was not based on a suspect classification, and therefore, was subject to rational basis review to determine whether the classification has a rational basis that was reasonably related to a legitimate government purpose.  Seagrave, 79 S.W.3d at 343.  The court did not specifically address whether the classification burdened a fundamental right, noting that it could apply to situations where the child was in the custody of

774 N.E.2d 1052, 1064 (2002) (holding that, under strict scrutiny, a grandparent visitation statute did not violate equal protection principles, given legislative recognition that children of unmarried or separated parents may be at heightened risk for certain kinds of harm when compared with children of intact families); *see also Curtis,* 542 Pa. at 261–68, 666 A.2d at 271–74 (Montemuro, J., dissenting) (discussing the impact of divorce upon children).[8]  Recognizing the *parens patriae* interest in the child's wellbeing and heightened risk of harm arising from the breakdown of a marriage, the classification under Section 5312 is directly and narrowly tailored to such breakdown, and only provides for visitation or partial custody to a grandparent in limited circumstances, similar to the limitations under section 5311 and discussed in *Hiller.*

Notably, Section 5312 requires the court to consider the pre-petition contact between the grandparent and child, and thereby respects the existence or absence of any relationship between them, and the prior willingness of the parent to foster such a relationship without a court order.  *See* 23 Pa.C.S. §§ 5311–5312; *Hiller,* 588 Pa. at 361, 904 A.2d at 887; *accord Blixt,* 774 N.E.2d at 1064 (noting that grandparent visitation "has everything to do with protecting the child, insofar as possible, by preserving the fruits of significant developmental

someone other than the child's natural or adoptive parents.  *See id.* Ultimately, however, the court determined that the Arkansas statute had been unconstitutionally applied because the trial court had failed to apply any presumption in favor of the custodial parent's decision regarding visitation.  *See id.* at 345.

8.  In *Curtis,* this Court found unconstitutional a statute that authorized the court to order a separated, divorced, or unmarried parent to provide for post-secondary, i.e. college, education of his or her child. *See* Curtis, 542 Pa. at 258, 666 A.2d at 269.  Determining that there was no entitlement to participate in such education, *see id.* at 268, 666 A.2d 265, the Court found no rational basis to provide only adult children of divorced parents such a benefit.  *See id.* at 258–59, 666 A.2d at 269–70.  Here, of course, the statute is directed to the custodial arrangement of a minor, of which the state has a *parens patriae* interest, and the harm to be protected against, disruption of a child's family environment, directly and necessarily flows from the circumstances covered by the classification at issue.  Consequently, the focus is on whether the means used are narrowly tailored to promote such interest. *See Khan,* 577 Pa. at 184, 842 A.2d at 947.

attachment whose seeds were planted by a parent").[9] Additionally, prior to granting a grandparent access to the child, the trial court must ensure that such grant will not interfere with the parent-child relationship, determine that such grant serves the best interests of the child, *see* 23 Pa.C.S. §§ 5311–5312, and afford special weight and deference to a parent's decision regarding such access. *See Hiller*, 588 Pa. at 361, 904 A.2d at 887. Moreover, any grant of partial custody and visitation must be reasonable. *See* 23 Pa.C.S. § 5312.[10]

9. Madame Justice Baldwin draws a distinction between the situation involving the death of a parent under Section 5311 and divorce under Section 5312 in terms of the balancing of the respective interests involved. *See* Dissenting Opinion, *op.* at 601–02, 927 A.2d at 195 (Baldwin, J.). Her conclusion appears to be that, although the Court declined in *Hiller* to condition grandparent visitation upon a constitutional threshold of parental unfitness or harm, *see Hiller*, 588 Pa. at 365–66 & n. 24, 904 A.2d at 890 & n. 24, such a requirement is appropriate to the divorce scenario. *See Dissenting Opinion, Op.* at 601–05, 927 A.2d at 195–97.

This Court recognized in *Hiller* that the trauma accompanying the death of a parent is substantial, and we recognize here that the effects of divorce, including the potential for ongoing disharmony between parents, may also be highly traumatic. *See, e.g.,* Jack Arbuthnot, *Courts' Perceived Obstacles to Establishing Divorce Education Programs,* 40 Fam Ct Rev 371, 371 (2002) (discussing a "growing awareness by academics, mental health professionals, community service providers, and court personnel alike that divorce can have devastating effects on those family members least empowered to protect themselves—the children"). There is no record that would enable us to gauge a qualitative or quantitative distinction between the impact of death and divorce of parents upon affected children, and we believe that it exceeds the realm of our judicial expertise to attempt to draw one. Finally, Justice Baldwin's appears to conflate merits review concerning Grandparents' ultimate entitlement to relief, which is not before us, with the threshold issue of whether Section 5312 is facially unconstitutional, with which we are now presented. In doing so, Justice Baldwin incorrectly suggests that we have ignored the presumption in favor of a fit parent (when we have specifically indicated that such presumption must be given full effect in a merits assessment), and concludes that Grandparents have failed to overcome the presumption (although they have not had the opportunity to do so, because their petition was dismissed by the trial court based on its determination that Section 5312 was facially unconstitutional). *See* Dissenting Opinion, *op.* at 605–06, 927 A.2d at 197.

10. In its opinion, the trial court highlighted that Grandparents could be afforded access to the children during Father's periods of custody. This factor may bear upon the merits of a court's ultimate best interests and reasonableness determinations. It should be noted, however, that in other cases access through a parent may not be possible, such as

Given the statute's focus on the protecting the child upon the breakdown of a marriage, and the limited circumstances in which it applies, that are directed toward promoting the welfare of the child and limiting the intrusion upon the parent, we find that the classification under Section 5312 is valid, upon the application of strict scrutiny. As such, Mother has not satisfied the heavy burden of establishing that the statute clearly, palpably, and plainly violates the Constitution. Accordingly, the order of the common pleas court is reversed, and the case is remanded for further proceedings consistent with this opinion.[11]

Justice EAKIN, BAER and FITZGERALD join the opinion.

Chief Justice CAPPY files a dissenting opinion.

Justice BALDWIN files a dissenting opinion in which Justice CASTILLE joins.

Chief Justice CAPPY, dissenting.

I join Justice Baldwin's dissenting opinion to the extent that it concludes that the state has no compelling interest to classify parents by marital status under 23 Pa.C.S. § 3512. Because this is a facial constitutional challenge, I do not join any analysis which delves into the underlying facts of this case but, rather, consider the statute on its face to determine if it creates a permissible classification that survives constitutional scrutiny. I write separately because I believe the majority fails to establish the state's compelling interest in classifying parents according to marital status within the framework of equal protection.

The essence of the constitutional principle of equal protection under the law is that like persons in like circumstances

when a parent has relocated, is incarcerated, or has been denied partial custody due to circumstances beyond the grandparents' control.

11. Although the trial court did not address Mother's claim that the statute violated her constitutional due process rights, for the reasons stated herein, the trial court must obviously consider *Hiller* and our present rationale in finally resolving such claim.

will be treated similarly. *Commonwealth v. Albert,* 563 Pa. 133, 758 A.2d 1149, 1151 (2000). The prohibition against treating people differently under the law does not preclude the Commonwealth from resorting to legislative classifications, provided that those classifications are reasonable rather than arbitrary and bear a reasonable relationship to the object of the legislation. *Id.* There are different levels of classifications and standards by which classifications are weighed, with the highest level of scrutiny reserved for classifications that burden a suspect class or a fundamental right. *Id.* at 1152. If the classification impinges a fundamental right protected by the Constitution, then it is subject to strict scrutiny. *Id.* (citing *Smith v. City of Philadelphia,* 512 Pa. 129, 516 A.2d 306, 311 (1986)). A statute containing a classification of this kind will not be entitled to the usual presumption of validity, as the majority asserts. *See Danson v. Casey,* 484 Pa. 415, 399 A.2d 360, 372 (1979). Rather, the Commonwealth must establish that its interference with a fundamental right is compelled by some legitimate state interest, and that the interference is narrowly tailored to be the least drastic means of accomplishing that objective. *Danson,* 399 A.2d at 372. Strict scrutiny requires that the classification be *necessary* to effectuate the state's compelling interest. *Commonwealth v. Bell,* 512 Pa. 334, 516 A.2d 1172, 1178 (1986) (emphasis added).

The majority does recognize that parents have the right to make decisions concerning the care, custody and control of their children, and that this is a fundamental right protected by the Due Process Clause. It also properly asserts the state's legitimate interest in the welfare of children. However, the focus of the inquiry under equal protection is the legitimacy of the classification created by the statute. The majority correctly states the law in this area on one hand, but then asserts that the equal protection inquiry is "essentially identical" to an inquiry of substantive due process. *See* Majority Opinion p. 589, 927 A.2d at 187 *supra.* In fact, the caselaw cited by the majority does not refer to the inquiries as "essentially identical" but rather as "substantially similar" and while it is true that due process and equal protection involve a

substantially similar inquiry in that the concepts are very much alike, the analyses do differ in what I believe to be a critical aspect. Both consider whether the government action is necessary to promote a compelling state interest and is narrowly tailored to effectuate that interest, but substantive due process applies this test to the legislation, whereas under equal protection we apply that test to the classification created by the legislation. *Compare Khan,* 842 A.2d at 947 *with Commonwealth v. Bell,* 516 A.2d at 1178. In other words, strict scrutiny under due process tests the government's interest to determine if the statute represents an acceptable infringement, whereas equal protection, the concept at issue here, considers whether the government's interest is sufficient to support a particular classification. I may seem to quibble over the precise language that the majority chooses to use, however, I believe that there is a real risk that the two inquiries will be conflated. This is problematic because distinct analyses may lead to divergent results. This concern is borne out by a careful reading of *Blixt v. Blixt,* 437 Mass. 649, 774 N.E.2d 1052 (2002), a case cited by the majority to support it's contention that the governmental interest here is compelling. In *Blixt,* the Supreme Judicial Court of Massachusetts considered a facial challenge to a grandparent visitation statute similar to our own on both due process and equal protection grounds. *Id.* at 1056. Under due process, the court found that the statute satisfied strict scrutiny because "our construction narrowly tailors it to further the compelling [s]tate interest in protecting the welfare of a child who has experienced a disruption in the family unit from harm." *Id.* at 660, 774 N.E.2d 1052. But, although the court recognized the standard of evaluating the classification within the statute when it turned to the equal protection analysis, it did not engage in any analysis as to how the classification itself served the compelling interest. *Id.* at 1064–65. Instead, the *Blixt* court merely repeated its due process analysis. *Id.* The fact that the two concepts are so substantially similar makes it easy to conflate the two distinct tests. Therefore, in the interests of protecting our constitution and our caselaw, I think it is important that we highlight the small, but important way in which the tests are dissimilar.

As stated above, to come to the conclusion that Section 3512 is constitutional after an equal protection challenge, the majority must show that creating a classification that holds out different groups of parents for disparate treatment according to their marital status is necessary to protect the welfare and safety of children. At this point, I am not persuaded that the majority opinion answers this question. The majority does correctly state the law with respect to a strict scrutiny analysis under equal protection, but then it cites to three cases which are inapt; two from other jurisdictions. In *Seagrave v. Price*, 349 Ark. 433, 79 S.W.3d 339 (2002), the Supreme Court of Arkansas considers a grandparent visitation statute under rational basis. The majority makes note of this, but does not elaborate on why it is relevant that another state's high court decided that such a statute could survive a far lower and more deferential level of scrutiny than we consider in this case. The same is true of *Curtis v. Kline*, 542 Pa. 249, 666 A.2d 265 (1995) (Montemuro dissenting), which discusses the impact of divorce on children in the context of rational basis review. The only case which appears to be on point is *Blixt*, which as I detail above, includes an equal protection inquiry which collapses into a due process resolution.

Having listed these cases, the majority simply concludes that "Section 5312 is directly and *narrowly tailored* to such breakdown" without proffering any independent analysis as to how classifying parents by marital status is necessary to protect the compelling interest of the state. Under an equal protection analysis, it is incumbent upon this Court to first find the classification to be necessary to a compelling state interest. The majority does not meet this burden.

I assert that it is not necessary to group parents into categories based on their marital status in order to protect the best interests of children because the fact of divorce or separation alone is not a proxy for determining which parents might cause their children harm. In other words, classifying parents by marital status does not necessarily divide the

children at risk from their parent's decisions from the children who are not at risk. This classification suggests that divorced or separated parents are inherently less fit to parent, as compared to parents who have married, or to parents who have never married, but who conjugate.[1] No matter what strife might actually ensue within the family unit, the decisions of fit married or cohabiting parents as to custody and care of their children will enjoy special status under Section 3512, but not the parenting decisions of the divorced or separated. This distinction between parents based on marital or quasi-marital status is arbitrary. Marital status alone can never serve as an indication of parental fitness. Without making any distinction as to marital status, we have held that there is a presumption that parents will act in a child's best interest. *Hiller v. Fausey*, 588 Pa. 342, 904 A.2d 875, 890 (2006). The classification in Section 3512 would seem to directly contradict this presumption and suggest that divorced or separated parents are necessarily in need of heightened state supervision when they make their parenting decisions.

Furthermore, this case is distinguishable from this Court's decision in *Hiller*, 904 A.2d at 875. There, this Court considered an as applied challenge to a different section of the Domestic Relations Code which allows grandparents to petition for custody when one parent is deceased. 23 Pa.C.S. § 5311. That statute classified parents into two groups. One group where both parents were alive, and the other, where one parent had died. This Court found that these two groups of parents were not similarly situated and that the classification was necessary to the compelling state interest of the welfare of children. This Court found that where one parent is deceased, the child might be at risk of loosing his or her

1. In *Bishop v. Piller*, 536 Pa. 41, 637 A.2d 976 (1994) (Opinion Announcing the Judgment of the Court), a plurality of this Court affirmed the Superior Court's construction of Section 3512 to include separated, but never-married parents within the category of "separated" parents subject to the additional state oversight provided by Section 3512. It seems reasonable to conclude then that never-married but cohabiting parents who have not separated remain outside the ambit of Section 3512 alongside married parents due to the fact that their living arrangements create a quasi-marital relationship.

connection to the grandparents from the deceased parent's side of the family. In that case, the classification did serve as a proxy for determining what children stood at risk of that particular type of harm and survived strict scrutiny, as applied to those particular facts, because the classification itself was necessary to effectuate a compelling government interest.

But unlike the situation in *Hiller,* separating the married or cohabiting from the divorced or separated is not a substitute for determining which parents might cause their children harm. Section 3512, which creates a classification that distinguishes between married or cohabiting and divorced or separated parents, does not necessarily serve the state's compelling interest in the welfare of children and, therefore, I believe that it cannot withstand strict scrutiny.

Accordingly, I would affirm the order of the Court of Common Pleas.

Justice BALDWIN, dissenting.

The Majority concludes that the trial court failed to accord proper weight to the interest of the State in the underlying action and that Section 5312 [1] of the Domestic Relations Code regarding grandparent custody and visitation survives a constitutional challenge on equal protection grounds. I respectfully dissent. Section 5312 of title 23 violates the Equal Protection provisions of the Fourteenth Amendment to the U.S. Constitution and Article I, §§ 1 & 26 of the Pennsylvania Constitution. Therefore, I would affirm the decision of the Court of Common Pleas of Berks County.

1. Section 5312 provides:

> In all proceedings for dissolution, subsequent to the commencement of the proceeding and continuing thereafter or when parents have been separated for six months or more, the court may, upon application of the parent or grandparent of a party, grant reasonable partial custody or visitation rights, or both, to the unmarried child if it finds that visitation rights or partial custody, or both, would be in the best interest of the child and would not interfere with the parent-child relationship. The court shall consider the amount of personal contact between the parents or grandparents of the party and the child prior to the application.
>
> 23 Pa.C.S. § 5312.

In *Commonwealth v. Albert*, 563 Pa. 133, 139, 758 A.2d 1149, 1152 (2000) (internal citations omitted) we set forth the following with respect to equal protection:

The essence of the constitutional principle of equal protection under the law is that like persons in like circumstances will be treated similarly. However, it does not require that all persons under all circumstances enjoy identical protection under the law. The right to equal protection under the law does not absolutely prohibit the Commonwealth from classifying individuals for the purpose of receiving different treatment, and does not require equal treatment of people having different needs. The prohibition against treating people differently under the law does not preclude the Commonwealth from resorting to legislative classifications, provided that those classifications are reasonable rather than arbitrary and bear a reasonable relationship to the object of the legislation. In other words, a classification must rest upon some ground of difference which justifies the classification and have a fair and substantial relationship to the object of the legislation. Judicial review must determine whether any classification is founded on a real and genuine distinction rather than an artificial one. A classification, though discriminatory, is not arbitrary or in violation of the equal protection clause if any state of facts reasonably can be conceived to sustain that classification.

In the instant case, section 5312 discriminates between married parents and divorced parents, permitting a heightened level of state intervention with respect to parents who are divorced. The majority relies on our recent decision in *Hiller v. Fausey*, 588 Pa. 342, 904 A.2d 875 (2006) in support of its conclusion that the classification created by section 5312 passes constitutional muster. In *Hiller*, this Court was called upon to determine whether Section 5311 of the Domestic Relations Code could survive a due process challenge where the parent of the child's deceased mother sought visitation rights and partial custody. Section 5311 was determined to interfere with the fundamental right of a parent to control the upbringing of his or her child, and consequently, we recog-

nized that a strict scrutiny analysis must be applied. The appropriate test therefore required a determination that the constitutional infringement was supported by a compelling state interest and that the infringement was narrowly tailored to effectuate that interest. We concluded in *Hiller* that the state possessed a compelling interest in the health and welfare of children, and that section 5311 narrowly limits those who can seek visitation or partial custody not merely to grandparents, but specifically to grandparents whose child has died. *Hiller*, 904 A.2d at 885–90. We further reasoned that section 5311 protected the father's right to raise his son as he saw fit by, among other things, providing a presumption in favor of the father's decisions and requiring that visitation rights not interfere with the parent-child relationship. *Id.*

Relying on *Hiller*, the majority in the instant case finds that the State has a compelling interest in distinguishing between married and divorced parents because of the disruption of the intact family by divorce. I respectfully disagree. *Hiller's* result required both the procedural protections afforded by Section 5311 and its application to a situation when a parent has died.[2] As we explained in *Hiller:*

> We cannot conclude that ... a benefit always accrues in cases where grandparents force their way into grandchildren's lives through the courts, contrary to the decision of a fit parent. In contrast, however, we refuse to close our minds to the possibility that in some instances a court may overturn even the decision of a fit parent to exclude a grandparent from a grandchild's life, especially where the grandparent's child is deceased and the grandparent relationship is longstanding and significant to the grandchild.

*Id.* at 886–87. Thus, the analysis in *Hiller* does not necessarily apply beyond the exceedingly narrow circumstance where a parent has died and the grandparent had a significant relationship with the child.

**2.** We found section 5311 clearly distinguishable from the statute at issue in *Troxel v. Granville,* 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). The statute in *Troxel* gave standing to any person at any time. However, section 5311 is limited to grandparents whose child has died.

The instant appeal involves an examination of a different subsection of the grandparent custody and visitation statute in the context of a different set of facts. Specifically, unlike *Hiller,* we are dealing with a divorced family with living parents who have different opinions as to the children's visitation with their grandparents. I believe this alters the landscape considerably, for I cannot accept that divorce alone diminishes the fundamental interest of parents who are making caretaking decisions. In particular, I do not believe that the statute can survive the scrutiny involved in comparing two otherwise fit parents who happen to be divorced to two similarly situated parents who are not divorced. In the instant case, the section 5312 classification of parents as married or divorced does not provide a real and genuine distinction upon which to permit state interference with the fundamental right of parents to direct the upbringing of their children. If Father lived with Mother, the present controversy would not be before this Court. While divorce, by necessity, permits the State to intervene to resolve immediate and direct disputes that arise between parents over custody and visitation, divorce is not the *sine qua non* of a compelling state interest when non-parents seek to challenge parental decision-making.

The majority has failed to identify a compelling reason to discriminate between married and divorced parents. Although the state has a longstanding interest in protecting the health and emotional welfare of children, that interest is not implicated merely as a result of divorce proceedings. While divorce opens the door for courts to resolve disputes between parents, it does not make parents unfit to make decisions that are in the best interests of their children. Divorce proceedings alone do not threaten the health, safety, morals or welfare of children to constitute a compelling reason for state interference. I believe that permitting the state to inject itself into a dispute between two fit parents involving grandparent visitation violates the grounding premise of *Hiller* and *Troxel,* that fit parents are accorded a presumption in favor of their decisions regarding their children. The heightened pro-

tection of this valued fundamental interest, recognized in both *Hiller* and *Troxel,* should not be altered by the marital status of otherwise fit parents, and the Commonwealth should be held to no lesser standard for intervention. In *Hiller* we found Section 5311 narrowly tailored to serve the state's compelling interest in children's health and welfare when one parent is deceased. We did not find that the desire of the State to foster close relationships between grandparents and grandchildren *alone* was sufficient to justify court-ordered visitation and custody over the objection of a fit parent.

While the Commonwealth has a compelling interest in protecting the well-being of its children, particularly in matters of health and safety, this legitimate and compelling interest does not extend to all things that might be beneficial to children nor confer upon the Commonwealth the power to intrude upon the decisions of a fit parent. The Commonwealth may intervene when preventing injury, abuse, trauma, exploitation, severe deprivation, or other comparable forms of significant harm. The United State Supreme Court has indicated that in certain limited arenas, such as compulsory education and compulsory vaccination, the State may contravene the decisions of a fit parent. *Meyer v. Nebraska,* 262 U.S. 390, 402, 43 S.Ct. 625, 627, 67 L.Ed. 1042 (1923) (commenting that "the power of the state to compel attendance at some school ... is not questioned"); *Jacobson v. Commonwealth of Mass.,* 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643 (1905) (upholding state compulsory vaccination); *accord In re Walker,* 179 Pa. 24, 36 A. 148 (1897); *Rhoades v. Sch. Dist. of Abington Twp.,* 226 A.2d 53, 60, 424 Pa. 202, 212 (1967). Further, some states have found it necessary to oppose the decisions of a parent involving medical treatment for life-threatening situations. *See, e.g., Matter of McCauley,* 409 Mass. 134, 565 N.E.2d 411 (1991); *Walker v. Superior Court,* 47 Cal.3d 112, 253 Cal.Rptr. 1, 763 P.2d 852 (1988); *People in Interest of D.L.E.,* 645 P.2d 271 (Colo.1982). However, the State does not gain a compelling interest in supervising the upbringing of a child when both parents are living, albeit divorced. "[M]ere improvement in quality of life is not a compelling state interest and is insufficient to justify invasion of constitutional rights. So long

as a family satisfies certain minimum standards with respect to the care of its children, the state has no interest in attempting to 'make things better.' " *King v. King,* 828 S.W.2d 630, 634 (Ky.1992) (Lambert, J. dissenting).

Section 5312, at issue in the instant case, requires consideration of the best interests of the child, the impact on the parent/child relationship, and an established relationship between grandparent and grandchild. 23 Pa.C.S. § 5312. Healthy relationships with grandparents unquestionably benefit children. However, the fact that such relationships are desirable does not permit the State to force them upon children contrary to the wishes of a fit custodial parent merely because that parent happens to be divorced. The Majority Opinion is jurisprudentially irreconcilable with both *Troxel* and *Hiller.* The Majority finds that the statute survives strict scrutiny because (1) the government has a compelling interest in children's well-being and preventing the "heightened risk of harm" caused by the dissolution of a marriage; and (2) the statute is narrowly tailored to further that interest, requiring, *inter alia,* that the court consider the best interest of the child and not interfere with the parent-child relationship. (Majority Opinion, op. at 590–92, 927 A.2d at 188–89). I fail to see how grandparent visitation is narrowly tailored to further the compelling interest of protecting the children of divorced parents from the perceived detriment caused by the dissolution of the core family unit. Court-ordered grandparent visitation does not significantly further the Commonwealth's interest in helping the children affected by divorce here because, unlike in *Hiller,* the paternal grandparents can visit their grandchildren during their child's custody time. *See Hiller,* 904 A.2d at 887 ("Unlike the statute in *Troxel,* which extended standing to any person at any time, Section 5311 narrowly limits those who can seek visitation or partial custody not merely to grandparents, but specifically to grandparents whose child has died.") [3] Moreover, there is no allegation that children of divorced or separated parents are so traumatized

---

**3.** Even *Troxel* emphasized the fact that the grandparents still had access to the children. *See Troxel,* 530 U.S. at 71, 120 S.Ct. at 2063 ("Finally,

by divorce or separation that they require the special and exceptional intervention of the Commonwealth. Even if divorce traumatizes children enough for the Commonwealth to acquire a compelling interest to intrude on the family, something more than court-ordered time with grandparents is required to further significantly the Commonwealth's purpose of safeguarding children's welfare.

Section 5312 permits a trial court to interfere too easily in parental decision-making. *Hiller* involved the death of a parent who could no longer ensure that her child was exposed to her family and heritage. That element, which was essential to overcoming the fundamental right of a parent to decide with whom the child associates, is missing here.

## Conclusion

*Troxel* made it clear that when a forum has been created for a court to consider grandparent visitation, the judge must presume that a fit parent acts in the best interests of his or her children. "So long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the state to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Troxel,* 530 U.S. at 68–69, 120 S.Ct. at 2061. This presumption is not simply applicable to joint decisions of fit married parents but applies to the decisions of all fit parents. *See Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (holding that the state may not interfere with an unwed father's custody rights absent proof of unfitness). It is parental fitness, not mere marital status that gives rise to the presumption. Divorce does not diminish the fundamental interest of a parent in parenting and does not make a father or mother less capable.

The Commonwealth has the power, cloaked in the doctrine of *parens patriae,* to determine in divorce proceedings how, in the best interests of the child, custody should be allocated. However, once this determination is made, *Troxel* indicates that decisions by a fit custodial parent must be accorded the

we note that there is no allegation that Granville ever sought to cut off visitation entirely.").

presumption that those decisions are in the best interests of the child. With both parents living, and no showing of parental unfitness or harm to the child, Grandparents have failed to demonstrate that divorce alone overcomes that presumption.

Justice CASTILLE joins this dissenting opinion.