**[J-53-2016] [MO: Saylor, C.J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| D.P. AND B.P., HIS WIFE, | : | No. 25 WAP 2015 |
| | : | |
| Appellants | : | Appeal from the Order of the Court of |
| | : | Common Pleas of Westmoreland |
| | : | County dated September 8, 2015 at No. |
| v. | : | 1750 of 2014-D. |
| | : | |
| | : | ARGUED: April 5, 2016 |
| G.J.P. AND A.P., | : | |
| | : | |
| Appellees | : | |

**CONCURRING AND DISSENTING OPINION**

**JUSTICE BAER**                 **DECIDED: SEPTEMBER 9, 2016**

I concur in the result in part. I would hold that the statutory provision at issue, 23 Pa.C.S. § 5325(2), which provides grandparents standing to seek custody of their grandchildren solely on the basis of parents' separation or divorce, is not narrowly tailored because it does not require an allegation that the children are at risk of harm, and therefore, the statute unconstitutionally infringes on parents' fundamental right to control access to their children. Accordingly, I agree with the majority that we should affirm the trial court's order granting Parents' motion to dismiss Grandparents' custody complaint for lack of standing. However, I respectfully disagree with the majority that we can limit striking the statutory provision as to separated parents only. Thus, I would strike Subsection 5325(2) in its entirety.

The majority correctly states that: 1) allowing grandparents standing to intervene in custody cases implicates the fundamental right of parents to exercise care, custody,

and control over their children and therefore we review this challenge under a strict scrutiny standard; 2) the state has a compelling interest in protecting children; and 3) because we are dealing with a parent's fundamental right to limit access to her child, the state-granted standing to Grandparents, when parents are separated or divorced, must be narrowly tailored to advance the state's compelling interest in safeguarding youth to be constitutional. While I join the majority's proper pronouncement of the applicable law, I respectfully do not agree with the majority's application of the law to Subsection 5325(2).

1. Fundamental Right

To assess Parents' challenge to Subsection 5325(2) as unconstitutionally infringing on their due process rights, we must first determine what parental prerogative is being infringed by allowing grandparents standing to seek court-ordered custody. I agree with the majority that Subsection 5325(2) implicates parents' fundamental right to be free from litigation regarding their children, especially in light of the nature of child custody litigation and the negative effects it can have on children. See Maj. Op. at 15 (explaining that the strain caused by child custody litigation itself can be an infringement of a parent's rights). Therefore, allowing grandparents to come into court infringes on parents' fundamental rights to raise their children, and specifically, their right to keep their children out of court, including during the time prior to the court reaching the merits of the case. It is worthy of emphasis that throughout child custody proceedings, children may be required to participate in physical and mental examinations, be present for home evaluations, provide in-court testimony, etc.

2. Compelling state interest

Because of the fundamental rights at issue, the next step in the analysis is to define the compelling state interest. It is beyond cavil that the state has a "longstanding

interest in protecting the health and emotional welfare of children." Hiller v. Fausey, 904 A.2d 875, 886 (Pa. 2006). Of course, "protecting . . . children" implies there is something we are protecting them from. Thus, in my view, in order to conduct the last step of the analysis, which is to determine whether the statute is narrowly tailored, we must first define the specific harm to children against which the legislation seeks to protect.[1] To that point, we are not looking for whether children are at risk of *any* harm when their parents separate or divorce. Of course, separation and divorce place children at some risk. Rather, because Subsection 5325(2) provides grandparents standing to further a relationship with their grandchildren, the statutory provision seeks to redress harm to children as a result of the lack of such relationship.

3. Narrowly tailored

While Subsection 5325(2) may embody a fair policy decision, we nevertheless must determine whether the state's infringement on parents' rights is narrowly tailored to protect children from harm. As discussed above, the infringement at issue here is forcing parents to litigate and justify their custody decisions. The harm sought to be cured is any harm caused by parents limiting contact between grandchildren and children. Thus, for the statute to be narrowly tailored, it must ensure that grandparents may hail parents into court only when the grandparents allege they have been

---

[1] I acknowledge that requiring harm is a departure from our holding in Hiller: "[W]e conclude that requiring grandparents to demonstrate that the denial of visitation would result in harm in every [case where a grandparent seeks custody based on the fact that the parent is deceased] would set the bar too high . . . ." Hiller, 904 A.2d at 890. The facts of this case illustrate why requiring harm is not setting the bar too high, and in fact, is constitutionally required. Moreover, despite not explicitly requiring harm in Hiller, we went on to note that harm was "to some extent implicit in the [statutory provision at issue] because the statute is triggered only when a child has suffered the loss of a parent . . . [and] that the child's loss of an additional beneficial relationship will result in some degree of harm." Id. at 809 n.24.

precluded from seeing the children and that lack of relationship has caused or will cause the children harm.

I acknowledge that the legislature attempted to tailor the standing statute to situations where children might be particularly benefitted by grandparent relationships by limiting its application to children of separated or divorced parents. However, Subsection 5325(2) is not narrowly tailored to situations where the state's infringement on parents' rights is necessary because nowhere in the standing statute does it require grandparents to plead that they have been precluded from seeing their grandchildren and that such preclusion will harm the children. Instead, once grandparents have standing under Subsection 5325(2), the court must take into consideration three factors: 1) the amount of personal contact between the child and the grandparents prior to the filing of the action; 2) whether the award interferes with any parent-child relationship; and 3) whether the award is in the best interest of the child. 23 Pa.C.S. § 5328(c)(1). Directing a trial court merely to consider whether the custody award will interfere with a parent-child relationship is not the same thing as precluding such award unless it is necessary to protect the child. These factors do not require a showing of harm to the child before a court may order custodial time for grandparents.

In summary, I would conclude that Subsection 5325(2) is unconstitutional on its face because it is not narrowly tailored in that it allows for grandparents to force parents into court to litigate their custody decisions without pleading (and proving) the harm to the child necessary to justify infringement on a parent's fundamental right. Accordingly, I would strike 23 Pa.C.S. § 5325(2) in its entirety.[2]

_____

[2] I recognize that my ultimate conclusion is at odds with our decision in Schmehl v. Wegelin, 927 A.2d 183 (Pa. 2007), where we held that Subsection 5325(2)'s predecessor passed constitutional muster, albeit in response to an equal protection challenge as opposed to a substantive due process challenge. Like Justice Wecht, I agree that the majority avoids confronting this contention by purportedly distinguishing (continued…)

_____

(…continued)

<u>Schmehl</u>, and I am similarly unpersuaded by the distinction.  <u>See</u> Slip. Op. at 1-2 (Wecht, J., concurring and dissenting).  Thus, based on the analysis in this case, I agree that <u>Schmehl</u>'s holding is untenable and should be overruled.