J-S70039-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| ORION GREEN, | : | |
| | : | |
| Appellant | : | No. 2383 EDA 2015 |

Appeal from the Judgment of Sentence April 13, 2015
in the Court of Common Pleas of Philadelphia County,
Criminal Division, No(s):  MC-51-CR-0034320-2014

BEFORE:  OLSON, OTT and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED NOVEMBER 23, 2016**

Orion Green ("Green") appeals from the judgment of sentence, entered by the Philadelphia Municipal Court, following his conviction of possession of a small amount of marijuana, as confirmed by the trial court's denial of Green's Petition for Writ of *Certiorari*.[1]  We affirm.

In its Opinion, the trial court summarized the facts underlying the instant appeal as follows:

> On October 7, 2014, at approximately 1:30 a.m., Officer [Anthony] Woltman ["Officer Woltman"] and his partner … were on duty in the area of 100 West Seymour Street in Philadelphia. The officers were in plainclothes and an unmarked car, and were on duty in that specific area due to a gun-point robbery that occurred the night before.  The earlier robbery occurred on the 100 block of Queen Lane, which is located three blocks away from the 100 block of West Seymour Street.  The area is considered a high-crime and drug area.  The description of the perpetrator of the robbery consisted of a black male in a dark hoodie riding a bicycle.

---

[1] 35 P.S. § 780-113(a)(31).

As the officers were traveling east on West Seymour Street, Officer Woltman observed [Green], who matched the description of the robbery suspect: [Green] was wearing a dark hoodie and was peddling westbound on a bicycle. When the officers and [Green] were both in the middle of the block, Officer Woltman got out of the car, identified himself and [his partner] as police officers, and asked whether they could talk to [Green] for a minute. While the officers were speaking to [Green], Officer Woltman observed a bulge in [Green's] front pant pocket. They believed the bulge was large enough to be a weapon[,] and decided to frisk [Green] for their safety. While conducting an open-palm frisk, Officer Woltman immediately recognized the bulge to be drug packaging. On that basis, Officer Woltman removed the packaging, recovering ten pink-tinted Ziploc packages of marijuana. He also recovered new and unused packaging from the same pocket. At that point, [Green] was placed into custody for possession of marijuana.

Trial Court Opinion, 2/29/16, at 1-2.

Prior to trial before the municipal court, Green presented a Motion to suppress evidence, which the municipal court ultimately denied. *See* N.T., 4/13/15, at 1-17. On the same record, the municipal court found Green guilty of the above-stated crime, and sentenced him to no further penalty. Green filed a Petition for Writ of *certiorari* to the trial court. In his Petition, Green claimed that the evidence seized from him was the result of an investigative stop, which was not supported by the required reasonable suspicion. Petition for Writ of *Certiorari*, ¶ 4. The trial court denied Green's Petition, after which Green filed the instant timely appeal.

On appeal, Green presents the following claim for our review:

Did not the [trial] court err as a matter of law and abuse its discretion by denying [Green's] [M]otion to suppress physical evidence where the police officer seized [Green] based upon a

legally deficient generic description of a perpetrator of a robbery that occurred at an unspecified time prior to the stop?

Brief for Appellant at 3.

Green argues that he was stopped by police officers "based on a generic description," which, Green contends, was inadequate under the Pennsylvania and United States Constitutions. *Id.* at 8. According to Green,

Philadelphia police had the most generic description of a perpetrator possible: a black man of no determinate age, height, weight, body type, skin-tone, or facial hair, wearing a dark hoodie of no particular color and with no description of any other clothing, riding a bicycle of no particular color or type.

*Id.* Green states that the officers caused him to dismount his bicycle, "in order to be questioned by them concerning a robbery that had occurred at some unspecified time the night before." *Id.* Green contends that this investigative detention was not supported by the requisite reasonable suspicion of criminal activity. *Id.* Because his detention was illegal, Green argues, the recovery of marijuana should have been suppressed. *Id.* at 8-9.

In reviewing an order denying a suppression motion,

[a]n appellate court may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, the appellate court is bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. However, it is also well settled that an appellate court is not bound by the suppression court's conclusions of law.

*Commonwealth v. Caple*, 121 A.3d 511, 516-17 (Pa. Super. 2015) (citations omitted).

> With respect to factual findings, we are mindful that it is the sole province of the suppression court to weigh the credibility of the witnesses. Further, the suppression court judge is entitled to believe all, part or none of the evidence presented. However, where the factual determinations made by the suppression court are not supported by the evidence, we may reject those findings. Only factual findings which are supported by the record are binding upon this Court.

*Id.* (citation omitted). "In addition, we are aware that questions of the admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion."

*Id.*

The Supreme Court of Pennsylvania has identified three distinct categories of interactions between citizens and the police. *Commonwealth v. Ellis*, 662 A.2d 1043, 1047 (Pa. 1995).

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Id.* (internal citations omitted).

The line between a "mere encounter" and an "investigative detention" is "not subject to a precise definition" and thus "[e]ach factual situation must be examined to determine if force was used to restrain the citizen in some way." *Commonwealth v. Jones*, 378 A.2d 835, 839 (Pa. 1977).

- 4 -

In determining whether a "mere encounter" has risen to the level of an "investigative detention," the focus of our inquiry is on whether a "seizure" of the person has occurred. *Commonwealth v. Mendenhall*, 552 Pa. 484, 715 A.2d 1117, 1120 (Pa. 1998). Within this context, our courts employ the following objective standard to discern whether a person has been seized: "**Whether, under all the circumstances surrounding the incident at issue, a reasonable person would believe he was free to leave.**" *Commonwealth v. Smith*, 1999 PA Super 96, 732 A.2d 1226, 1232 (Pa. Super. 1999) (emphasis added). *See also Commonwealth v. Matos*, 543 Pa. 449, 672 A.2d 769, 774 (Pa. 1996). Thus, "a seizure does not occur simply because a police officer approaches an individual and asks a few questions." *United States v. Kim*, 27 F.3d 947, 950 (3d Cir. 1994).

Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

*Commonwealth v. McClease*, 750 A.2d 320, 324-25 (Pa. Super. 2000).

Our Supreme Court has adopted an objective test for determining whether a police officer has restrained the liberty of a citizen such that a seizure occurs. The pivotal inquiry in making this determination is whether a reasonable [person] innocent of any crime, would have thought he [or she] was being restrained had he [or she] been in the defendant's shoes. A Court must examine all surrounding circumstances evidencing a show of authority or exercise of force, including the demeanor of the police officer, the manner of expression used by the officer in addressing the citizen, and the content of the interrogatories or statements. If a reasonable person would not feel free to terminate the encounter with police and leave the scene, then a seizure of that person has occurred.

*Commonwealth v. Key*, 789 A.2d 282, 288-89 (Pa. Super. 2001).

Our review of the record discloses that, at the suppression hearing,

Officer Woltman testified as follows regarding his interaction with Green:

> I was in the area working with my partner, Officer Toto, Badge 6731. We were assigned to plain clothes, unmarked car. I was assigned to the specific area due to a gun-point robbery that occurred the previous night. The description on that robbery was a black male in a dark hoody riding a peddle bicycle. That happened on the 100 Block of Queen Lane, which is approximately three blocks away from Seymour Street. Around that time[,] I think it was 1:38 ish [*sic*][,] I was traveling eastbound on Seymour. I observed [Green] peddling westbound, it was a red peddle bike[,] if I'm not mistaken. He was wearing a dark hoody. Based on the reason I was in the area[,] I decided to stop him for investigation. [We] got out of the car [and] identified ourselves as police officers. I asked him if we could talk to him for a minute. I don't recall initially what our conversation was about, but as I'm talking to him, in his right front pants pocket, I observed a bulge. The bulge to me appeared to be enough that it could have been a weapon. For my safety[,] I decided to do a frisk….

N.T., 4/13/15, at 5-6. During cross-examination, Officer Woltman testified that "[d]ue to the reason I was in the area[,] it grabbed my attention, with [Green] on a bike in a dark hoody. So, yes, at that time I decided to stop him." ***Id.*** at 9. During argument on the suppression Motion, the Commonwealth did not contest that Officer Green had effectuated an investigative detention, but argued that the detention was supported by reasonable suspicion. ***Id.*** at 15-17.

Notwithstanding the parties' assumption that the interaction constituted an investigative detention, the record lacks objective support for such a determination. The evidence of record established that, upon seeing Green, the two officers exited a vehicle and asked if they could ask Green a few questions. There is no evidence of the "threatening presence of several officers, the display of a weapon by an officer, some physical touching of the

person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." ***See McClease***, 750 A.2d at 325. In fact, there is no evidence upon which to conclude that the officers compelled Green to stop. Based upon this sparse evidence of record, we discern no error or abuse of discretion by the trial court in denying Green's suppression Motion, based upon its determination that the interaction constituted a mere encounter. Accordingly, we affirm Green's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>11/23/2016</u>