J-S16014-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | | |
|---|---|---|---|
| J.G. AND F.G. | | : | IN THE SUPERIOR COURT OF |
| | | : | PENNSYLVANIA |
| | Appellants | : | |
| | | : | |
| | v. | : | |
| | | : | |
| | | : | |
| L.W. | Appellee | : | |
| | | : | No. 1833 MDA 2017 |

Appeal from the Order Entered September 19, 2017
In the Court of Common Pleas of Bradford County Civil Division at No(s):
2017FC0096

BEFORE:   BOWES, J., MURRAY, J., and PLATT*, J.

MEMORANDUM BY BOWES, J.:                    **FILED AUGUST 20, 2018**

J.G. ("Father") appeals by permission the interlocutory order entered on September 19, 2017, wherein the trial court dismissed his preliminary objections to the custody complaint filed by L.W., the maternal grandmother ("Grandmother"), against him and F.G. ("Mother") seeking partial physical custody of their now-seven-year-old son, P.M.G.[1]  We affirm.

As there was no evidentiary hearing or findings of fact issued by the trial court in this case, we gleaned the factual and procedural history from the trial court's opinion and the uncontested assertions leveled in the parties' pleadings.   P.M.G. was born during 2010 of Father's marriage to F.G. ("Mother").   However, the marital relationship deteriorated and the parties

_____

[1] Mother is not a party to this appeal.

_____

\*   Retired Senior Judge assigned to the Superior Court.

subsequently divorced at some point prior to Grandmother's initiation of this custody litigation. In the meantime, Father remarried and exercised sole physical custody of his son under an informal arrangement with Mother.[2] However, he permitted Grandmother to exercise partial physical custody of P.M.G. on at least one weekend per month.

On March 1, 2017, Grandmother filed a complaint against Mother and Father seeking partial custody of P.M.G. As it relates to this appeal, Grandmother did not expressly assert standing under the then-applicable version of § 5325 of the Child Custody Law, which we set forth in its entirety *infra*.[3] However, she referenced Mother and Father's divorce by averring that

---

[2] Father claims in his brief that he maintains sole legal custody, but the certified record does not corroborate that contention.

[3] The General Assembly amended § 5325(2), effective on July 3, 2018, and removed the references to the parents' marital status. Under the relevant portion of the newly-fashioned provision, grandparents have standing to seek partial physical custody,

> (2) where the relationship with the child began either with the consent of a parent of the child or under a court order and where the parents of the child:
>
> (i) have commenced a proceeding for custody; and
>
> (ii) do not agree as to whether the grandparents or great-grandparents should have custody under this section[.]

23 Pa.C.S. § 5325(2), effective July 3, 2018.

The revised section does not include the divorce-related grounds for standing that Grandmother asserts herein. Moreover, to the extent that Grandmother, rather than Mother or Father, initiated the custody litigation, it does not

Father is currently re-married and that Mother is single. Following the ensuing custody conciliation conference, the trial court entered an interim order providing Grandmother partial physical custody one Sunday per month pending the custody trial. Thereafter, on May 24, 2017, Father filed preliminary objections to Grandmother's complaint, wherein he challenged her standing to pursue any form of physical custody of P.M.G.

On September 19, 2017, the trial court entered an order that overruled Father's preliminary objections and certified that the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and thus an immediate appeal . . . may materially advance the ultimate termination of the matter." Trial Court Order, 9/19/17.

_____

appear that Grandmother would have standing under the new provision had she filed the complaint after July 3, 2018. However, our legislature did not indicate that this amendment would apply retroactively. Significantly, the legislative note to the newly-amended § 5324, which does not apply herein, specifically advised that those changes "shall apply to all custody proceedings irrespective of whether the proceeding was commenced before, on or after the effective date of this section." 23 Pa.C.S. § 5324 legislative note. A similar note did not accompany the § 5325 amendments, and absent an indication that the General Assembly intended a *post hoc* application of the amended section, we do not invoke the alterations *sua sponte* in order divest standing after the fact. **See e.g.**, **M.G. v. L.D.**, 155 A.3d 1083, 1087 n.5 (Pa.Super. 2017) (emphasis added) "while we have re-evaluated a party's standing following a factual change in circumstances, *i.e.*, the termination of parental rights or adoption, our review of Pennsylvania jurisprudence does not support [an] *ad hoc* re-evaluation of standing . . . **absent a determination that the change in law applied retroactively**."

Father filed a timely petition for permission to appeal with this Court, which we granted on December 1, 2017.[4]

Father presents a single issue for our review: "Does Section 5325(2) of the Domestic Relations Code . . . violate . . . Father's fundamental rights as a parent by conferring standing upon a Grandparent to seek partial [physical] custody based upon the fact that Father and Mother are divorced?" Father's brief at 4. Neither Mother, who has proceeded *pro se* throughout the litigation, nor the Pennsylvania Attorney General's Office filed a brief or offered any indication of their respective view of Father's constitutional challenge to the applicable version of § 5325(2).

We review a trial court's determination regarding standing for legal error or an abuse of discretion. **Butler v. Illes**, 747 A.2d 943, 944 (Pa.Super. 2000). Standing in child custody cases differs from the typical determination regarding whether a party has a direct interest in the outcome of litigation. As this Court previously explained,

> In the area of child custody, principles of standing have been applied with particular scrupulousness because they serve a dual purpose: not only to protect the interest of the court system by assuring that actions are litigated by appropriate parties, but also to prevent intrusion into the protected domain of the family by those who are merely strangers, however well-meaning.

---

[4] Father complied with Pa.R.A.P 521(a) by providing notice to the Attorney General of Pennsylvania of his facial challenge to the constitutionality of § 5325(2) and a copy of his petition for permission to appeal. The Attorney General's Office did not respond.

***D.G. v. D.B***., 91 A.3d 706, 708 (Pa.Super. 2014) (quoting ***J.A.L. v. E.P.H.***, 682 A.2d 1314, 1318 (Pa.Super. 1996)).

In determining the constitutionality of a statute, our Supreme Court has stated, "As the constitutionality of [a] statute presents a question of law, our review is plenary. A statute duly enacted by the General Assembly is presumed valid and will not be declared unconstitutional unless it clearly, palpably and plainly violates the Constitution. The party seeking to overcome the presumption of validity bears a heavy burden of persuasion." ***Schmehl v. Weglin***, 927 A.2d 183, 186 (Pa. 2007) (internal quotation marks and citations omitted). In ***Commonwealth v. Smith***, 732 A.2d 1226 (Pa.Super. 1999), this Court summarized the relevant analytical framework. Collecting cases, we explained, "All doubts are to be resolved in favor of sustaining the constitutionality of the legislation." ***Id***. at 1235 (citing ***Commonwealth v. Blystone***, 549 A.2d 81, 87 (Pa. 1988)). Indeed, "we are obliged to exercise every reasonable attempt to vindicate the constitutionality of a statute and uphold its provisions." ***Commonwealth v. Chilcote***, 578 A.2d 429, 435 (Pa.Super. 1990). Most importantly, "one of the most firmly established principles of our law is that the challenging party has a heavy burden of proving an act unconstitutional [and] [i]n order for an act to be declared unconstitutional, the challenging party must prove the act clearly, palpably and plainly violates the constitution." ***Commonwealth v. Barud***, 681 A.2d 162, 165 (Pa. 1996) (internal quotation marks omitted).

The Child Custody Law in effect at the time Grandmother initiated this litigation provided grandparents standing for partial physical custody and supervised physical custody as follows:

> In addition to situations set forth in section 5324 (relating to standing for any form of physical custody or legal custody), grandparents and great-grandparents may file an action under this chapter for partial physical custody or supervised physical custody in the following situations:
>
> > (1) where the parent of the child is deceased, a parent or grandparent of the deceased parent may file an action under this section;
> >
> > (2) where the parents of the child have been separated for a period of at least six months or commenced and continued a proceeding to dissolve their marriage; or
> >
> > (3) when the child has, for a period of at least 12 consecutive months, resided with the grandparent or great-grandparent, excluding brief temporary absences of the child from the home, and is removed from the home by the parents, an action must be filed within six months after the removal of the child from the home.

23 Pa.C.S. § 5325[5] (emphasis added).

In **D.P. v. G.J.P.**, 146 A.3d 204 (Pa. 2016), our Supreme Court addressed a due process challenge to § 5325(2) and concluded that the portion of paragraph (2) that related to married parents who have been separated for at least six months was unconstitutional because it impermissibly infringed upon a presumptively-fit parent's fundamental right

---

[5] The statute also grants standing to great-grandparents; however, for ease of discussion, we refer only to grandparents.

to make decisions concerning the care, custody, and control of his or her children. As it relates to the issue at bar, we note that the parents in **D.P.** never initiated divorce or custody litigation, and they mutually agreed to end paternal grandparents' custody.

The High Court began by outlining the constitutional constraints on statutes that provide standing to grandparents to participate in child custody proceedings.

> As reflected in our cases and in **Troxel** [**v. Granville**, 530 U.S. 57 (2000)], Grandparent visitation and custody statutes authorize state action and, as such, they are subject to constitutional limitations. There is no dispute that Section 5325 burdens the right of parents to make decisions concerning the care, custody, and control of their children; that such right is a fundamental one, and that, as such, it is protected by the Fourteenth Amendment's due-process and equal-protection guarantees. In light of these factors there is also no disagreement that, to survive a due process or equal protection challenge, Section 5325 must satisfy the constitutional standard known as strict scrutiny.

**D.P., supra** at 210 (footnotes, some citations, and parenthetical information omitted). The Court continued,

> The basic features of strict scrutiny, relating to whether the governmental action is narrowly tailored to a compelling state interest, **see Hiller** [**v. Fausey**, 904 A.2d 875, 886 (Pa. 2006)], are well established. As expressed in **Schmehl**, the inquiries per the Due Process and Equal Protection Clauses are distinct but overlapping: pursuant to the former, the government's infringement on fundamental rights must be necessary to advance a compelling state interest, whereas under the latter it is the classification inherent in the statute which must be necessary to achieve that interest.
>
> Broadly speaking, the state, acting pursuant to its *parens patriae* power, has a compelling interest in safeguarding children from

various kinds of physical and emotional harm and promoting their wellbeing. That aim has been invoked to accomplish certain objectives where appropriate, such as involuntarily terminating a parent's rights and providing a child with a permanent home. The component of the government's *parens patriae* responsibility implicated here is its interest in ensuring that children are not deprived of beneficial relationships with their grandparents.

*Id*. at 210-211 (citations and footnotes omitted).

Thus, as outlined by our High Court, there are presumptions that parents act in a child's best interest and that a fit parent has a fundamental right to raise his or her children without governmental interference. Accordingly, to be constitutional, the state's interest in interfering with that right must satisfy strict scrutiny as it relates to due process, *i.e.*, 1) that the state's interest in upholding a child's beneficial relationship with his or her grandparents is compelling, and 2) that the grandparent standing provision is narrowly tailored to effectuate that interest.

In finding that the portion of the statute granting standing to the grandparents of children whose parents were separated for at least six months was unconstitutional, the High Court confirmed that the government had a compelling interest in protecting the health and emotional welfare of children under its authority as *parens patriae*. **Id**. at 211. However, applying the constitutional constructs outlined in **Schmehl**, the Court determined that the statute was not narrowly tailored to the desired interest.

In **Schmehl**, the Supreme Court addressed the question of equal protection in the context of divorced parents who disagreed as to whether the

grandparents should exercise periods of partial custody. Examining the predecessor to § 5325(2), the **Schmehl** Court upheld the constitutionality of a classification within a statute that conferred standing to grandparents where parents separated or commenced and continued divorce proceedings. **Schmehl**, **supra** at 189-190; 23 Pa.C.S. § 5312 (repealed effective January 23, 2011). In that case, the children's parents fashioned a custody arrangement prior to divorcing. Five months after the divorce, the mother objected to the paternal grandparents exercising periods of partial custody. The paternal grandparents initiated custody litigation under § 5312, and the mother countered that the section violated her due process and equal protection rights under the Fourteenth Amendment because, *inter alia*, it classified non-intact families and treated them differently. The trial court found § 5312 unconstitutional and dismissed the custody complaint summarily.

On appeal, the High Court determined that the classification was intended to alleviate the harmful circumstances that arise when "the child's family environment has been disturbed." **Id**. at 188. The Court stressed that the classification was not simply "antagonism against non-intact families." **Id**. It recognized the state's compelling interest in upholding the child's wellbeing, identified a heightened risk of harm that flows from the dissolution of the marriage, and concluded that the statute was narrowly tailored to that breakdown in that it provided standing to grandparents for visitation or partial

custody only in limited circumstances. The Court explained that, based upon the differences between the risks of harm to children of married and divorced parents, the disparate classification was essential to the child's wellbeing. Accordingly, the **Schmehl** Court resolved, "[r]ecognizing the *parens patriae* interest in the child's wellbeing and heightened risk of harm arising from the breakdown of marriage, the classification under Section 5312 is directly and narrowly tailored to such breakdown, and only provides for visitation or partial custody to a grandparent in limited circumstances[.]" **Id**. at 189.

Focusing on the overlapping inquires implicated under the Due Process and Equal Protection Clauses, the **D.P.** Court invoked the **Schmehl** Court's determination that the statutory classification of non-intact families was justified to effectuate the state's *parens patriae* interest in protecting children from harm under the prior statute and whether the means were narrowly tailored. The High Court applied the relevant portion of the **Schmehl** Court's equal protection analysis to determine that the infringement posed by § 5325(2) on fit parents who have separated for at least six months could **not** satisfy strict scrutiny under the due process analysis. The **D.P.** Court reasoned:

> [W]e conclude that the fact of a parental separation for six months or more does not render that state's *parens patriae* interest sufficiently pressing to justify potentially disturbing the decision of presumptively fit parents concerning the individuals with whom their minor children should associate. It follows that the infringement upon parental rights worked by Section 5325 is not narrowly tailored to a compelling governmental interest, as the provision could have been drafted to exclude separation as an

independent basis for grandparent standing. Consequently, Section 5325 cannot survive strict scrutiny and, as such, it violates the fundamental rights of parents safeguarded by the Due Process Clause.

**D.P.**, **supra** at 215-216. (citations and footnote omitted).

Significantly, however, the High Court declined to address the second portion of paragraph (2) that relates to parents who have commenced and continued a proceeding to dissolve their marriage, *i.e.*, divorce. It explained,

> As noted, paragraphs (1) and (3) of Section 5325, as well as the second half of paragraph (2), set out separate and distinct bases for grandparent standing that do not depend on the first half of paragraph (2), that is, on the parents having been separated for at least six months. Since these are not "essentially and inseparably connected with" the separation provision, they are capable of execution and may continue in force absent the first half of paragraph (2). Such provisions, moreover, are neither implicated by the underlying facts nor challenged by the parties.

*Id*. at 217. Deflecting the dissenting justices entreaty to address the constitutionality of the remainder of paragraph (2), which we address *infra*, the Court reasoned,

> As concerns the second half of paragraph (2) in particular, invalidating it per the suggestion forwarded by Justices Baer and Wecht would require reaching beyond the bounds of this dispute and declaring Section 5325 unconstitutional more broadly than is necessary to resolve the appeal. It would be premature—and thus improper—to make a wide-reaching constitutional declaration along these lines in the present context in which no challenge to the standing requirements relative to divorced parents has been raised or briefed. We thus differ with any suggestion that we are somehow "avoiding" this issue.

*Id*. (citation omitted).

Justice Baer and Justice Wecht both filed a concurring and dissenting opinion in which they separately concluded that the entire statute was unconstitutional. *Id*. at 217-221. Justice Baer found that the remaining portion of § 5325(2) was "not narrowly tailored in that it allows for grandparents to force parents into court to litigate their custody decisions without pleading (and proving) the harm to the child necessary to justify infringement on a parent's fundamental right." *Id*. at 219.

Justice Wecht framed the question as a potential equal protection violation and argued that marital status is irrelevant as to when courts should permit judicial intrusion upon the fundamental right of a fit parent. Justice Wecht opined,

> Marital status – whether married, separated, or divorced— is not simply a crude or rough proxy for parental fitness. It is no proxy at all. . . . To maintain any portion of Section 5325(2) is to deny social reality, to consign roughly half the population to second-class status, and to stigmatize these citizens and their children. No portion of Section 5325(2) comports with the U.S. Constitution's due process and equal protection clauses, nor with ***Troxel v. Granville***, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).

*Id*. at 221.

Father's argument blends the respective positions of both dissenting Justices. The crux of Father's contention is that the ***D.P.*** Court's analysis regarding the unconstitutionality of the standing provision in relation to separated parents applies equally to parents who have divorced. He contends that Section 5325 burdens parents' fundamental liberty interest in raising their

children without satisfying the requirements of strict scrutiny, *i.e.*, the governmental action is not narrowly tailored to a compelling state interest. He continues that, since he is presumed to be a fit parent, the state cannot exercise its authority as *parens patriae* unless there is an indication that he is not acting in the child's best interests. He reasons that where that fundamental indication of unfitness is absent, the state's interest in permitting a grandparent to interlope on his right to decide with whom P.M.G. may associate is diminished. For the following reasons, we disagree.

At the outset, we observe that, although both of the dissenting opinions provide persuasive rationales for extending the majority's reasoning to divorced parents and finding the entirety of § 5325(2) unconstitutional, thereby reversing **Schmehl** expressly, neither Justice Baer nor Justice Wecht garnered a majority of the votes. Hence, their well-reasoned perspectives did not prevail, and to the extent that **Schmehl** is consistent with the majority's discussion in **D.P.**, it remains authoritative precedent.

Moreover, notwithstanding the ephemeral attraction of Justice Wecht's position that marital status is an improper measure of constitutionality, it is obvious that the **D.P.** Court considered additional factors in deciding to invalidate the first portion in § 5325(2). Most importantly, the Court considered the fact that the parents were **unified** in their opposition to the grandparents' custody rights and it balanced that joint decision against the state's infringement on the parents' fundamental rights. **See D.P.**, **supra** at

215 (quoting **Hawk v. Hawk**, 855 S.W.2d 573, 557 (Tenn. 1993) ("[T]he trial court's interference with the united decision of admittedly good parents represents a virtually unprecedented intrusion into a protected sphere of family life.")).

Significantly, unlike the facts of the case at bar, **D.P.** concerned a situation where grandparents based their attempt to undermine the married parents' unified decision on the sole fact that the parents had remained separated for at least six months. As it related to that dynamic, the High Court accurately recognized that the ability of the parents to reach a joint decision on such an important issue as third-party custody was evidence that a basis did not exist to "disturb the ordinary presumption . . . that fit parents act in their children's best interests." **Id**. at 207. Phrased differently, the Court later reiterated, "where there is no reason to believe presumptively fit parents are not acting in their children's best interests, the government's interest in allowing a third party to supplant their decisions is diminished." **Id**. at 214.

Conversely, the Court observed that where parents are incapable of reaching a unified agreement regarding the involvement of grandparents, the presumption that they both are acting in their children's best interests is reduced. **Id**. at 212 ("The breakdown in unified parental decision making [is] more severe in **Schmehl** than it is . . . where [p]arents . . . are able to co-parent in agreement."). Indeed, as the **D.P.** Court recognized, in this

situation, the state's interest in preventing potential harm due to the severing of the grandparent-child relationship is heightened.

Instantly, no agreement exists between Mother and Father in relation to whether Grandmother should exercise partial physical custody of P.M.G. In this vein, as opposed to the facts of **D.P.**, the present case aligns with **Schmehl**, which addressed the identical scenario where divorced parents did not agree to permit grandparent custody.

Further, as it relates to the significance of the fact that Mother and Father are divorced, **D.P.** highlighted factors that distinguished the portion of § 5325(2) relating to divorce from the unconstitutional provision concerning mere separation. Notably, as to the latter scenario, the Court referenced prior decisions that acknowledged the existence of empirical studies reflecting objective evidence of harm caused to children of divorce, but it indicated that similar data did not exist in relation to separation. **See D.P.** at 211-212 citing **Schmehl**, **supra** at 189 n.9 (scholarship addressing effects of divorce on children) and at 188–89 (prior judicial expressions regarding impact of divorce on families). The **D.P.** Court explained, "we cannot assume that any empirical studies relating to the effects of divorce carry over to mere separation." **Id**. at 212. Hence, the **D.P.** Court's analysis specifically recognized a more compelling state interest in protecting children involved in divorce proceedings as opposed to children of married parents who are merely separated. **Id**. at 215 ("Although separation may involve a disruption of the nuclear family unit,

the children are often shielded from having to participate in court proceedings and are, likewise, free from having to assimilate the knowledge that the government is now involved in their family life.").

In addition, **D.P.** highlighted the increased level of government involvement in divorce proceedings as opposed to separations. It noted that, since separations do not always lead to divorce and the collateral economic and custodial consequences that are inherent in the dissolution of a marriage, courts are not necessarily involved in the family affairs of separated parents. Indeed, unlike families of divorced parents, non-intact families with separated parents may avoid contact with the court's entirely. Accordingly, as previously mentioned, the children in these families are typically shielded from the harms associated with the dissolution of the marriage. **Id**. at 212.

In contrast, by filing for divorce, parents expressly request the court's involvement, and create the attendant harm to children that is supported by empirical data. As government involvement and oversight is more significant where divorce proceedings have been commenced than where the parents merely separate, the governmental interest is greater and implicates a heightened state interest in protecting children of divorce proceedings as opposed to children of separation. Thus, the **D.P.** Court's strict scrutiny analysis relating to the constitutional infirmity of the portion of § 5325 relating to separated parents does not align with this divorce case as easily as Father contends.

In sum, Father did not establish that the statute "clearly, palpably and plainly violates the constitution." ***Barud***, ***supra*** at 165. As ***D.P.*** acknowledged, significant differences exist between grandparent standing based upon parental separation of at least six months and standing based upon the parents' divorce, including empirical evidence of harm, which has not been similarly documented in children of separation. Likewise, divorced parents have requested court involvement and oversight in their family's lives where separated parents did not. Finally, although unrelated to the divorce/separation dichotomy, ***D.P.*** recognized that the state's interest in protecting children by promoting the grandparent-child relationship is greater where, as here, the parents are unable to make a unified decision as to the nature and extent of the child's relationship with the grandparent.

Guided by the premise that the statute is presumptively constitutional, and the ***D.P.*** Court's express refusal to invalidate § 5325(2) in its entirety or overturn its earlier reasoning in ***Schmehl*** that the state has a heightened state interest in protecting children of divorce, we uphold the constitutionality of the portion of § 5325(2) that granted standing to grandparents in cases where parents commenced and continued a proceeding to dissolve their marriage. Stated plainly, insofar as the statute did not disturb the decision of presumptively fit parents unless they have invited state action by initiating divorce proceedings, the provision was narrowly tailored to the compelling governmental interest of protecting children of divorce.

Order affirmed.

Judge Murray and Judge Platt concur in the result.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 08/20/2018